IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No.: 07-184-JDB |
| v. | UNITED STATES' MOTION FOR DOWNWARD DEPARTURE |
| KOREAN AIR LINES CO., LTD., | PURSUANT TO U.S.S.G. 8C4.1(b) |
| Defendant. | |

The United States hereby moves for a downward departure from the United States Sentencing Guidelines ("U.S.S.G.") fine range calculated in the above-captioned matter due to Korean Air Lines Co., Ltd.'s substantial assistance in the continuing investigation of Sherman Act violations by other companies and individuals.  The United States respectfully submits that the following factors enumerated in U.S.S.G. §8C4.1(b) warrant downward departure.

**A.    Nature and Extent of Assistance**

U.S.S.G. §8C4.1(b)(2) lists as a relevant factor the nature and extent of the organization's assistance.  Since it has begun cooperating, Korean Air Lines Co., Ltd. ("KE") has produced hundreds of thousands of pages of documents and has made translations of Korean-language documents available for government review.  Included among the materials produced were foreign-located documents, and the company has committed to making additional foreign-located documents available upon request by the United States.

KE obtained separate counsel for its key executives and facilitated making key executives available for interviews, at company expense, in the United States.  As a result, the

1

United States was able to interview several executives who would have been beyond the subpoena power of the grand jury. KE has also identified other employees who may have information useful to the ongoing investigation and has agreed to make them available upon request in the United States.

KE is committed to continuing its cooperation by, among other things, providing U.S. and foreign-located documents and making its executives available to come to the United States to be interviewed, testify before the grand jury, or at any trial that may result from the investigation.

In sum, KE has provided exemplary cooperation and is obligated by the terms of its plea to continue to provide that cooperation in the future.

**B.    Timeliness**

U.S.S.G. §8C4.1(b)(3) lists as a relevant factor the timeliness of the organization's assistance. In this case, Korean Air was one of the first companies to begin cooperating fully with the United States' investigation, and its cooperation began shortly after it had conducted its own internal investigation of the subject conduct.

**C.    Government's Evaluation of the Assistance**

U.S.S.G. §8C4.1(b)(1) lists as a relevant factor the United States' evaluation of the assistance rendered by the organization. In this case, the United States believes that KE has provided full and substantial cooperation which has been of significant and useful assistance to its ongoing investigation. KE's cooperation has provided the United States with timely, extensive, credible information against both numerous corporate and individual co-conspirators which advanced this investigation at its earliest stages. As a direct result of information

provided by KE, the United States has been able to expand the scope of its cargo and passenger investigation and to obtain the cooperation of additional corporate co-conspirators.

Prior to obtaining KE's cooperation, the United States believed that the KE passenger conspiracy was primarily focused on wholesale rates. Through its cooperation, KE provided evidence of a broader passenger conspiracy and provided additional information regarding aspects of the cargo conspiracy that were unknown to the United States, effectively broadening that conspiracy and implicating other carriers.

International conspiracies which are formed and carried out by conspirators located in various countries are difficult to prove absent the testimony of co-conspirators who are willing to submit to the jurisdiction of the United States. As a foreign corporation with headquarters outside the United States, KE could have retained highly relevant documents in its Korean offices and refused to cooperate and obtain the cooperation of its executives in this investigation. It chose, however, to assist the United States early in its investigation in a highly significant and useful way.

In the opinion of the United States, the cooperation tendered and promised by KE merits a downward departure as contemplated by Section 8C4.1. As set forth in the parties' Plea Agreement, a copy of which has been provided to the Court, the U.S.S.G. sentencing calculation results in a fine range of $316.3 million to $632.6 million. Based on consideration of the factors set forth in U.S.S.G. §8C2.8, the parties reached agreement that the appropriate point within the U.S.S.G. fine range from which to deduct a substantial assistance discount is $462 million.[1] The

---

[1] As stated in the Plea Agreement, the affected commerce attributable to the cargo conspiracy, upon which the U.S.S.G. fine range was in part based, included only revenues related to KE's cargo shipments out of the United States. In deciding the point within the fine

United States believes that a 35% discount from that point is appropriate and warranted for KE's substantial assistance and early cooperation, resulting in a fine of $300 million.  Accordingly, the United States recommends and respectfully requests that its request for downward departure be granted and that KE be sentenced to pay a criminal fine of $300 million pursuant to the terms of the parties' Plea Agreement.

DATED: August 16, 2007

                                                  Respectfully submitted,

BY: _____
Mark Rosman, Assistant Chief
Brent Snyder, Trial Attorney
Mark Grundvig, Trial Attorney
Kathryn Hellings, Trial Attorney
Elizabeth Aloi, Trial Attorney
U.S. Department of Justice
Antitrust Division
1401 H Street, N.W., Suite 3700
Washington, D.C. 20530
Tel.: (202) 307-6694
Fax: (202) 514-6525

---

range from which to deduct a substantial assistance discount, the parties considered the factors set forth in U.S.S.G. §8C2.8(a), including the volume of KE's revenues from cargo shipments into the United States.  The United States believed it was necessary to consider the revenues from inbound shipments in this fashion in order to adequately reflect the seriousness of KE's conduct and the harm to U.S. victims.

CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing to be served upon the undersigned attorney by First Class U.S. Mail, postage pre-paid, and by facsimile at the address set out below on August 13, 2007:

>Nathan Andrisani
>Morgan, Lewis & Bockius LLP
>1701 Market Street
>Philadelphia, PA 19103-2921
>Tel: 215-963-5362
>Fax: 215-963-5362

>Willard K. Tom
>Morgan, Lewis & Bockius LLP
>1111 Pennsylvania Avenue, N.W.
>Washington, D.C. 20004
>Tel: 202-739-5389
>Fax: 202-739-3001

DATED:   August 16, 2007 at Washington, D.C.

_____
Brent Snyder